# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
)
ALEJANDRO ORTIZ-PATINO, on behalf of himself )
and all others similarly situated, )
)
                       Plaintiffs, )      No. 17-12400
)
                    v. )
)
KAMCOR, INC. MECHANICAL )
MAINTENANCE AND DESIGN, INC., AND )
NICK S. BEAVER )
)
               Defendants )
_____)


## PLAINTIFFS' ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR PERMISSION TO DISTRIBUTE NOTICE TO CLASS MEMBERS

This case was brought on behalf of current and former employees of Defendants who perform welding, ship fitting, pipe fitting, and other laborer tasks at various shipyards and other industrial locations across the Eastern United States. Plaintiff asserted claims against Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the Massachusetts overtime statute, Mass. Gen. Laws. C. 151 § 1A, *et seq.,* alleging that he and similarly situated employees routinely worked more than forty hours per week but were not paid a full overtime premium of one-and-one-half times their regular hourly rate, in violation of state and federal law. Defendants contested these allegations and at all times denied that they violated any wage laws. After attending mediation on November 27, 2018 with Hon. Peter Lauriat (Ret.) of JAMS in Boston, Massachusetts, the Parties succeeded in reaching a proposed class action settlement of this case. Plaintiffs now seek preliminary approval of that settlement.

The proposed settlement would pay a total of $180,000 in consideration for a release of the overtime and wage-related claims of a Rule 23 class of approximately 42 individuals, as well as consideration for the release of Plaintiff Ortiz-Patino's individual discrimination claim against Defendants that he had been pursuing at the MCAD. After accounting for an award of attorney's fees, a proposed service award, and the MCAD settlement payment to the named Plaintiff, Plaintiffs' counsel estimates that the amount being paid to the Rule 23 class constitutes more than 80% of the potential unpaid overtime damages had the class ultimately succeeded at trial. Plaintiff's counsel therefore believes that the settlement is fair, reasonable, and adequate, and that it provides substantial benefit to the class members, while accounting for the substantial

1

risks and delays associated with continued litigation, including the risk that Defendants would have succeeded on the merits of their affirmative defenses.

By this Motion, Plaintiff now seeks 1) certification of a Rule 23 class for settlement purposes only and 2) an order granting preliminary approval of the settlement so that a Settlement Notice can be issued to all eligible Rule 23 class members.  A copy of the proposed settlement agreement is attached hereto as Exhibit 1, and the proposed Notice is attached hereto as Exhibit 2.  After completion of the Notice process, the Parties would then return to the Court for a final approval hearing in or around August 15, 2019, at which time Plaintiffs will describe the results of the notice process (i.e., whether any class members have objected or excluded themselves from the settlement class) and the Parties will seek final approval of the proposed class action settlement.

## I.    THE PROPOSED PLAN OF DISTRIBUTION OF THE SETTLEMENT FUNDS

The proposed Rule 23 settlement class consists of all persons who worked as welders, pipe fitters, ship fitters, machinists, electricians, painters, and laborers for Kamcor or MMDI in Massachusetts for all or part of the period from December 6, 2014 to the date of Preliminary Approval of this Settlement.  Assuming the Court grants final approval of the settlement, the class portion of the settlement funds will be distributed to Rule 23 class members who do not exclude themselves from the settlement.  In other words, there is no claims process and every class member will receive a settlement payment at his or her last known address on file with Defendants.  The settlement shares will be calculated based on the number of weeks that each class member worked for Defendants during the relevant time period, which can be calculated based on payroll

data that Defendants provided prior to mediation.  The Parties expect to send notice to approximately 42 employees who are members of the settlement class.

Under the proposed settlement, Defendants shall pay a total of $180,000, to be allocated as follows:

- $90,000 for the Class Shares of participating class members;

- $5,000 service payment to the named Plaintiff, Alejandro Ortiz-Patino;

- $60,000 for Class Counsel's attorneys' fees and costs;

- $25,000 for settlement of the named Plaintiff's discrimination claim pending at the MCAD, which amount was separately negotiated at mediation.

Defendants will fund the proposed settlement in four payments to be fully completed over an eighteen-month period.  Payments to claiming class members will likely be made in three separate distributions to reflect the payment schedule.    Any amounts remaining in the final distribution due to uncashed checks will be distributed as *cy pres* to the Employment Unit of Greater Boston Legal Services.[1]  The settlement is non-reversionary; no funds will be returned to Defendants for any purposes.  Class counsel shall perform all settlement administration duties in-house, including mailing of the settlement notice, tracking any objections or requests for exclusion, calculating settlement shares, and coordinating with Defendants to have checks issued to class members for the non-wage portion of their settlement.  Class counsel shall not seek any additional fees or costs associated with these duties, which will likely preserve

---

[1]    Due to the relatively small size of the class and the fact that Plaintiffs' counsel is administering the settlement in-house, Plaintiffs do not anticipate that there will be any uncashed checks requiring a *cy pres* distribution.

thousands of dollars in class funds that are often spent on costly third-party settlement administration.

## II.    THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

Federal Rule 23 – which concerns class actions and settlement of class action cases – was amended effective December 1, 2018.  The amended Rule specifically addresses the standard for *preliminary* review of class action settlements in order to obtain settlement notice to putative class members.  Where a class settlement is proposed, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.  Fed. R. Civ. P. 23(e)(1).  Thus, amended Rule 23(e) makes clear that, at the preliminary approval stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  As discussed below, each of these questions is answered in the affirmative.

### A.  THE PROPOSED SETTLEMENT CLASS SATISFIES THE PREREQUISITES OF RULE 23

The proposed Rule 23 settlement class is defined as follows:

> All persons who worked as welders, pipe fitters, ship fitters, machinists, electricians, painters, and laborers for Kamcor or MMDI in Massachusetts for all or part of the period from December 6, 2014 to the date of Preliminary Approval of this Settlement.

In order to obtain approval of the class action settlement on behalf of this group, the Court must ensure that the prerequisites of Rule 23 are satisfied.  "To obtain

certification of a class action for money damages under Rule 23(b)(3), a plaintiff must

satisfy Rule 23(a)'s ... prerequisites of numerosity, commonality, typicality, and

adequacy of representation ... and must also establish that 'the questions of law or fact

common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.'" Amgen Inc. v. Connecticut Ret. Plans & Tr.

Funds, 568 U.S. 455, 460 (2013), quoting Rule 23(b)(3).  The proposed settlement

class satisfies the relevant criteria.

### 1. Numerosity

The numerosity requirement is satisfied because, due to the 42-person class,

joinder of all the class members would be impracticable. Fed.R.Civ.P. 23(a)(1). Courts

have often certified classes of 40 or fewer individuals,[2] and courts have noted that a

more relaxed "numerosity" requirement should be applied in the employment context

based on the understanding that not all class members may wish to come forward

individually and challenge their employer's conduct.  See, e.g., Mullen v. Treasure

Chest Casino, LLC., 186 F.3d 620, 624 (5th Cir. 1999) (fact that "putative class

---

[2]    See, e.g., Bert v. AK Steel Corp., 2006 WL 1071872, *5 (certifying class of 16 unsuccessful minority job applicants); Knight v. Mill-Tel, Inc., 2013 WL 3895341 (D. Kan. July 29, 2013) ("Courts have found that classes as small as twenty members can satisfy the numerosity requirement"); Cypress v. Newport News General and Nonsectarian Hospital Assoc., 375 F.2d 648, 653 (4th Cir.1967) (certifying class of 18 people); Moore v. Napolitano, 926 F. Supp. 2d 8, 28 (D.D.C. 2013) (certifying class of 27 members) (citing Anderson v. Pa. Dep't of Pub. Welfare, 1 F.Supp.2d 456, 461 (E.D.Pa.1998); Knight v. Lavine, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) (holding that class of 56 people "easily satisfies" numerosity requirement); Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986) (in disparate impact claims, certifying class with 31 identified members).

members were still employed by the Casino [and] might be reluctant to file individually for fear of workplace retaliation" weighed in favor of finding numerosity satisfied).

      2.  Commonality

A class also must share common questions of law or fact.  Fed.R.Civ.P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." In re Relafen Antitrust Litig., 231 F.R.D. at 69. When the claims arise out of a companywide policy or practice, the commonality prerequisite is satisfied.  See, e.g., Overka v. American Airlines, 265 F.R.D. 14, 18 (D. Mass. 2010) (the "commonality requirement is usually satisfied" where "implementation of [a] common scheme is alleged").  Here, the proposed class satisfies the "commonality" prong because they challenge Defendants' uniform policy of not properly calculating the class members' overtime wages by excluding the *pier diem* payments from the regular rate.  See, e.g., Ripley v. Sunoco, Inc., 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation").

      3.  Typicality

To meet the requirement of typicality, the class representatives' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." Garcia–Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir.2009) (internal quotation marks omitted).  Here, Plaintiff's claims for unpaid overtime are identical to those asserted on behalf of the

Rule 23 class members.  See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23).

## 4.  Adequacy

To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).  Here, the named Plaintiff shares interests identical to those of the putative class members; namely, all seek to obtain unpaid overtime wages for times in which they worked more than forty hours per week for Defendants.  Further, Class Counsel has been found to be "adequate" counsel in a number of prior wage-and-hour class actions brought on behalf of low-wage workers.  See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 289 (D. Mass. 2015) (finding that counsel at Lichten & Liss-Riordan "is experienced and more than capable of proceeding with the litigation").

## 5.  Predominance

Predominance is satisfied upon showing that a sufficient constellation of common issues bind class members together.  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 296 (1st Cir. 2000). The requirement is "merely that common issues predominate, not that all issues be common to the class." Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 39 (1st Cir. 2003).  Courts have routinely held that the predominance

requirement is satisfied in overtime cases such as this where employees challenge a uniform policy of their employer, because there are common answers that will determine the outcome of the litigation; that is, had this case proceeded to trial, Plaintiffs would have attempted to prove that Defendants' uniform policy in which workers did not receive the full overtime premium owed when they worked more than forty hours per week due to the manner in which Defendants' calculated the class members' "regular rate" of pay.  See generally Lyons v. Citizens Fin. Grp., Inc., 2012 WL 5499878, at *3-*4 (D. Mass. Nov. 9, 2012) (certifying class under Rule 23 where all plaintiffs performed identical duties and challenged their classification as exempt from overtime pay).

  6.  Superiority

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. In re Relafen Antitrust Litig., 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997). Superiority is satisfied here, where the financial resources of the class members, most of whom are immigrant laborers, weighs in favor of certifying the class, as the class members may not have the means to pursue individual actions to recover damages which, for a large number of class members, may be less than $1,000 even if they were successful at trial.

  B.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well established that courts favor settlements of lawsuits over continued litigation.  See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can resolve many thousands . . . of claims that might otherwise threaten to swamp the judiciary," 2 McLaughlin on Class Action § 6:3.

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandates approval of such settlements if they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005).  In order to determine whether the settlement is "fair, reasonable, and adequate," a court must look to Rule 23(e)(2)'s newly-minted approval factors, which examine whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of
>       distributing relief to the class, including the
>       method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's
>       fees, including timing of payment; and
> (iv) any agreement required to be identified under
>       Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative
>       to each other.

Fed. R. Civ. P. 23(e)(2).  Prior to the 2018 amendments to Rule 23, courts examined

similar factors and at the preliminary approval stage to determine whether a settlement

was in the "range of reasonableness," they noted that "[w]hen sufficient discovery has

been provided and the parties have bargained at arms-length, there is a presumption in

favor of the settlement."  In re M3 Power Razor System Marketing & Sales Practice

Litig., 270 F.R.D. 45, 62-63 (D. Mass. 2010); see also City Partnership Co. v. Atlantic

Acquisition, 100 F.3d 1041, 1043 (1st Cir. 1996).  More specifically, there was a

"presumption that the settlement is within the range of reasonableness" when "(1) the

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small

fraction of the class objected."  Id., quoting In re Lupron Marketing & Sales Practices

Litig., 345 F. Supp. 2d 135, 137 (D. Mass. 2004).  In addition, courts considered the

amount of the settlement compared to the amount at issue in the case and the Plaintiffs'

likelihood of succeeding on the merits and recovering damages on their claims.  See,

e.g., M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-23 (D.

Mass. 1987).[3]

---

[3]    However, in considering these factors and determining whether to approve
a settlement, the Court "does not resolve the legal and factual issues that are the basis

An examination of the Rule 23 "fairness" factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate, and should be preliminarily approved by the Court.[4]  Notably, settlements in wage and hour class action cases brought by Plaintiffs' counsel have been approved in dozens of cases.  These settlements contained terms similar to the proposed settlement in this case, including a similar method for notifying class members, distributing the settlement fund, allocating incentive payments, and providing for the one-third attorneys' fees award.[5]

---

of the underlying lawsuit."  Bronson v. Board of Educ. of City School Dist., 604 F. Supp. 68, 74 (S.D. Oh. 1984); see also DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1178 (8th Cir. 1995) ("[W]hile it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes.").  A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed."  Williams v. Vukovich, 720 F.2d 909, 922 (6th Cir. 1983).

[4]    Because notice has not yet issued, class members have not yet had an opportunity to object to the proposed settlement.  Thus, Plaintiffs will address the fourth factor, concerning the percentage and nature of any objections, if there are any, after the notice period has concluded.

[5] These cases include the following settlements approved in the District of Massachusetts and Massachusetts Superior Court: Garcia v. E.J. Amusements of New Hampshire, Inc., C.A. No. 13-12536 (D. Mass. 2015); DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013); Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013); Cutter et al v. HealthMarkets, Inc., C.A. No. 10-cv-11488 (D. Mass. 2012); Abla et al. v. Brinker Restaurant Corp., Civ. A. No. 10-10373 (D. Mass. 2011); Kiely et al v. TripAdvisor, C.A. 08-11284 (D. Mass. 2011); Maliniski et al. v. Starwood Hotels, Civ. A. No. 08-11859 (D. Mass. 2010); Hayes et al. v. Aramark Sports Service LLC, Civ. A. No. 08-10700 (D. Mass. 2009); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009); See, e.g., Reekie v. Ronit Hospitality LLC, Middlesex C.A. No. 1681-cv-0434 (Mass. Super. May 23, 2017); Corado v. Rufo Cleaning & Maintenance Co., Suffolk C.A. No. 15-1529 (Mass Super. 2016); DeSouza v. The Solomon Partnership Inc. d/b/a All-Pro Cleaning Systems, Middlesex C.A. No. 11-0792 (Mass Super. Aug. 23, 2016); Lavitman v. Uber Technologies, Inc. et al, Suffolk C.A. No. 2012-4490 (Mass. Super. 2015); Hernandez v. Harvard University, Middlesex C.A. 2012-3759 (Mass. Super. 2014); McCue v. A&M Andrade Management Corp., Suffolk C.A. 2013-1702 (Mass. Super. 2014); St. Cyr v. Mass. Institute of Technology, Norfolk C.A. No. 2012-01135 (Mass. Super. 2014); Branchaud v. Ruby Tuesday, Inc., Norfolk C.A. No. 2012-00216 (Mass. Super. 2013).

Here, the named Plaintiff and class counsel have more than adequately represented the interests of the class.  The parties engaged in litigation for more than one year, including briefing two motions for conditional certification, conducting full written discovery, and conducting a deposition of the individual Defendant.  Through discovery, Plaintiffs' counsel obtained full payroll data of the putative Rule 23 class members from which they could calculate potential damages that could have been recovered if they were successful in their claims.  The named Plaintiff responded to written discovery, attended the full day mediation with class counsel to attempt to resolve this matter, and has provided invaluable assistance throughout the prosecution of this action.  There are no conflicts between the named Plaintiff and members of the settlement class.

The settlement was also negotiated at arms-length.  After engaging in discovery, the Parties retained the services of Hon. Peter Lauriat (Ret.) of JAMS in Boston, Massachusetts to assist in resolving this matter.

The relief offered by the settlement is also more than adequate.  Plaintiffs estimate that the $90,000 to be distributed to class members approximates more than 80% of the class members overtime damages if they had been successful in all of their claims spanning the entire class period.  Although Plaintiffs were confident in the merits of their claims, Defendants had asserted a number of affirmative defenses and it also appeared from review of Defendants' payroll records that they changed their pay practices surrounding the manner and method of per diem calculations around April 2016, and therefore Plaintiffs' claims for unpaid overtime wages after that time period presented additional challenges.   As a result, the total settlement award represents a

fair settlement of the class members' claims, particularly considering the hurdles that remained for the workers to obtain class certification and succeed on their claims.  In light of these uncertainties, as well as likely significant delays in obtaining any compensation even if they were ultimately successful at trial, Plaintiff and his counsel believe that the proposed settlement is an excellent result for these class members.

Indeed, Plaintiffs' counsel have not hesitated to take class action cases to trial in other instances, and have agreed to a settlement only when they believed doing so was in the best interests of the class.  Plaintiffs' lead counsel in this case, Shannon Liss-Riordan, is considered a leading attorney in wage and hour class action litigation, having successfully litigated many such cases in Massachusetts and around the country.  Counsel were able to draw on this substantial experience in order to provide the plaintiff class with a high degree of expertise in this field.

Finally, all settlement class members will receive equitable treatment under the settlement.  Based on Plaintiff's counsel's review of payroll records and investigation of the class claims, Plaintiff's counsel has concluded that a uniform formula for calculating settlement shares that provides each individual class member with a set amount for each week that they worked is the most fair and reasonable formula to distribute funds to the class.

## III. THE REQUESTED ATTORNEYS' FEE AND INCENTIVE FEES ARE FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

The proposed distribution of the settlement proceeds provides for a one-third share for attorneys' fees.  The total amount of the settlement is $180,000.  As discussed above, Plaintiff's counsel requests one-third of the amount - $60,000 – be paid in attorney's fees.  This amount is comprised of $47,500 in attorneys' fees for

representation of the class in their wage claims, and $12,500 arising from the representation of the named Plaintiff in his MCAD proceeding and the settlement of that matter. That one-third amount for attorney's fees, which has been consistently approved by the courts in the cases listed above in footnote 5, is fair and reasonable and should be approved in this case as well. Moreover, even considering a "lodestar crosscheck," this amount of attorneys' fees is eminently reasonable. Plaintiffs' counsel billed more than 150 hours litigating this case for a full year, engaging in extensive discovery, motion practice related to notice under the FLSA, and conducting a comprehensive damages analysis prior to mediation of the case. Moreover, as with all cases of this nature handled by Plaintiffs' counsel's firm, Plaintiffs' counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne all the expenses, costs, and risks associated with litigating this case.[6] The notice will inform class members that one-third of the settlement proceeds would be used to pay for attorneys' fees.

Plaintiffs' counsel's experience with the federal and state overtime laws and this type of litigation provided the class a high degree of expertise in this area. A one-third attorney's fee in a common fund case has been consistently approved as reasonable.

---

[6] Plaintiffs' counsel is not seeking an additional award of litigation costs on top of the one-third contingency that is sought from the settlement fund; nevertheless, at the time of final approval Plaintiffs' counsel can provide a more detailed explanation of litigations costs and the hours spent by Plaintiffs' counsel on this matter so that the Court can perform a full lodestar crosscheck.

Moreover, Plaintiffs' counsel's firm operates on an almost all contingent fee basis. It is through the award of these one-third contingent fees when they do prevail or successfully resolve a case that the firms are able to pursue litigation for years, advance hundreds of thousands dollars in case expenses, and take risks in representing clients who cannot afford to pay for legal services.

See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire

Lit., 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220

million settlement fund).[7]

Courts favor awarding fees from a common fund based upon the percentage of

the fund method.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who
> recovers a common fund for the benefit of persons other than himself or
> his client is entitled to a reasonable attorneys' fee from the fund as a
> whole. . . .  Jurisdiction over the fund involved in the litigation allows a
> Court to prevent . . . inequity by assessing attorney's fees against the
> entire fund, thus spreading fees proportionately among those benefited by
> the suit.

---

[7]    In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases. See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  See also Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving award of one-third attorneys' fee for a $23.5 million settlement in a Tips Law class action); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for a $12 million settlement in a Tips Law class action); In Re: Lithotripsy Antitrust Litigation, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); In re: Medical X-Ray Film Antitrust Litigation, 1998 U.S. Dist. LEXIS 14888, *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570 (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re: Peritus Software Servs., Inc. Sec. Litig., Civ. A. No. 98-10578 (D. Mass. 2000); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897 (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., Civ. A. No. 10829 (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation, Civ. A. No. 88-1858 (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, Civ. A. No. 94-10752 (D. Mass. 2001); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135 (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466 (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement).

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted); see also Blum v. Stenson, 465 U.S 886, 900 n.16 (1984).

Among the advantages of the percentage approach recognized by the First Circuit in Thirteen Appeals was the fact that it is less burdensome to administer than the lodestar method.  See Thirteen Appeals, 56 F.3d at 307.  The court in that case also endorsed the percentage of recovery approach because it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours. See id. ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency.  Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement"). Similarly, the Court observed that the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills.  See id. ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  . . . the market pays for the result achieved"), quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992).

Finally, awarding a percentage of the common fund, such as the one-third fee in this case, recognizes and encourages the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.[8]  Unlike

---

[8]     In approving one-third contingency fees for such cases, courts have recognized that Plaintiffs' counsel who take cases on contingency, including the

traditional firms that receive hourly fees on a monthly basis, plaintiff's attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work.  Sometimes fees and expenses are recovered; other times, despite hundreds or even thousands of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees.  Courts have long recognized this reality.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  For that reason, courts have routinely approved one-third fee awards in class settlements, recognizing "the attorneys' fees requested [are] entirely contingent upon success.  Proposed Class Counsel risk[s] time and effort and advance[s] costs and expenses, with no ultimate guarantee of compensation."  Macedonia Church v. Lancaster Hotel, LP, 2011 WL 2360138, *14 (D. Conn. June 9, 2011).

---

undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work.  The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive larger payments. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (addressing anti-trust laws).  This reasoning applies with equal force to wage and hour claims.  See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).

For these reasons, and given this precedent approving one-third recovery for attorneys' fees in class action cases just like this one, the Court should award the requested one-third recovery in this case as well.

In addition, the proposed settlement would include a modest incentive payment of $5,000 for the lead plaintiff, Alejandro Ortiz-Patino, who initiated this case, and has been actively involved in prosecution of this action since its inception.  Were it not for Ortiz-Patino's commitment to this action, classwide relief would not have been possible.

This incentive payment is eminently reasonable in this case, as Ortiz-Patino expended time and effort to bring these claims on behalf of himself and his co-workers

18

assisting Plaintiffs' counsel in prosecution of these wage claims, responding to written discovery, and attending a full-day mediation in Boston in November 2018.

Courts have routinely approved incentive payments in class settlements as a way of compensating class representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of state and federal law. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated actively in the litigation"), quoting In re Lupron, 228 F.R.D. 75, 98 (D. Mass. 2005); In re Compact Disc Min. Adver. Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiff," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws"); see also Sheppard v. Consol. Edison Co. of New York, Inc., 2002 WL 2003206, *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in much higher amounts than has been requested here. See, e.g., Ingram v. The Coca-Cola Co., 200

F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative

Plaintiff); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74

(S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments

ranging from $35,000 to $50,000 for named Plaintiff); Yap v. Sumintomo Corp. of

America, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional

compensation to representative Plaintiff).  See also Matamoros et al v. Starbucks

Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving $25,000 incentive

payments for lead Plaintiff in wage action); DaSilva et al v. CleanNet USA, Inc., C.A.

No. 12-10580 (D. Mass. 2013) (same); Abla v. Brinker Restaurant Corp., Civ. A. No. 10-

10373 (D. Mass. 2011) (same); Hayes v. Aramark Sports Service LLC, Civ. A. No. 08-

10700 (D. Mass. 2009) (same); Apana v. Fairmont Hotels & Resorts, Inc., Civ. A. No.

08-00528 (D. Haw. 2011) (same).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court

enter an order 1) certifying the Rule 23 class for settlement purposes only; 2) granting

preliminary approval of the parties' proposed settlement as fair, reasonable, and

adequate, 3) authorizing the mailing of the proposed notice to the class consistent with

the terms of the Parties' proposed settlement agreement; and 4) scheduling a final

approval hearing on or after August 15, 2019 (or no less than 100 days after granting of

preliminary approval)  at which time Plaintiffs will request that the Court grant final

approval of the settlement.

Respectfully submitted,

ALEJANDRO ORTIZ-PATINO,
on behalf of himself and
all others similarly situated,
By his attorneys,

/s/ Matthew Thomson
Shannon Liss-Riordan, BBO #640716
Matthew Thomson, BBO #682745
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
Facsimile:  (617) 994-5801
Email:  sliss@llrlaw.com
        mthomson@llrlaw.com

Dated:        April 25, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, a copy of this document was served by electronic filing on all counsel of record.

/s/  Matthew W. Thomson
Matthew W. Thomson