# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____  )
)
ALEJANDRO ORTIZ-PATINO, on behalf of himself   )
and all others similarly situated,                             )
)
                            Plaintiffs,   )    No. 17-12400
)
                           v.                  )
)
KAMCOR, INC. MECHANICAL                              )
MAINTENANCE AND DESIGN, INC., AND            )
NICK S. BEAVER                                                  )
)
                         Defendants   )
_____  )

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND ORDER OF DISMISSAL

This case was brought on behalf of current and former employees of Defendants who perform welding, ship fitting, pipe fitting, and other laborer tasks at various shipyards and other industrial locations across the Eastern United States.  Plaintiff asserted claims against Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the Massachusetts overtime statute, Mass. Gen. Laws. C. 151 § 1A, *et seq.,* alleging that he and similarly situated employees routinely worked more than forty hours per week but were not paid a full overtime premium of one-and-one-half times their regular hourly rate, in violation of state and federal law. Defendants contested these allegations and at all times denied that they violated any wage laws. After attending mediation on November 27, 2018 with Hon. Peter Lauriat (Ret.) of JAMS in Boston, Massachusetts, the Parties succeeded in reaching a proposed class action settlement of this case.

The Court granted preliminary approval of the settlement on April 30, 2019.  After that date and pursuant to the Parties' settlement agreement, Plaintiff's counsel distributed notice of the settlement in Spanish and English to the 56 class members identified by Defendants.  No objections have been received, and no class members have excluded themselves from the settlement class.  Under the terms of the settlement agreement, class members were not required to submit any claim form or other documentation in order to participate in the settlement and all class members will receive a check in the first distribution of settlement funds.

By this Motion, Plaintiff now seeks 1) final certification of a Rule 23 class for settlement purposes only and 2) an order granting final approval of the settlement and dismissal of the action with prejudice.  A copy of the proposed settlement agreement is attached hereto as Exhibit 1, and a Proposed Order is attached hereto as Exhibit 2.  As discussed in greater detail below, final approval is warranted under Rule 23(e)(2) because the settlement is fair, reasonable, and

adequate. The proposed settlement would pay a total of $180,000 in consideration for a release

of the overtime and wage-related claims of a Rule 23 class of 56 individuals, as well as

consideration for the release of Plaintiff Ortiz-Patino's individual discrimination claim against

Defendants that he had been pursuing at the MCAD. After accounting for an award of attorney's

fees, a proposed service award, and the MCAD settlement payment to the named Plaintiff,

Plaintiffs' counsel estimates that the amount being paid to the Rule 23 class ($90,000) constitutes

approximately 80% of the potential unpaid overtime damages had the class ultimately succeeded

at trial. Assuming all class members accept their settlement payment and cash the check that

will be mailed to them under the Agreement, class members will receive an average share of

more than $1,600. The proposed allocation is attached hereto as Exhibit 3,[1] which demonstrates

that the settlement provides substantial benefit to the class members, while accounting for the

substantial risks and delays associated with continued litigation, including the risk that

Defendants would have succeeded on the merits of their affirmative defenses. The settlement is

the product of arm's length negotiation, and final approval should be granted.

## I.    FACTUAL BACKGROUND AND THE TERMS OF THE SETTLEMENT AGREEMENT

The proposed Rule 23 settlement class consists of all persons who worked as welders, pipe

fitters, ship fitters, machinists, electricians, painters, and laborers for Kamcor or MMDI in

Massachusetts for all or part of the period from December 6, 2014 to the date of Preliminary

Approval of this Settlement. Assuming final approval of the settlement, the class portion of the

settlement funds will be distributed to Rule 23 class members who do not exclude themselves from

---

[1]    The projected individual settlement shares set forth in Exhibit 3 are the calculated settlement shares based on information currently available; Plaintiffs' counsel is in the process of confirming the dates of employment of a small handful of settlement class members, which may have a minor effect on the final distribution amounts.

the settlement. In other words, there is no claims process and every class member will receive a settlement payment at his or her last known address on file with Defendants. The settlement shares will be calculated based on the number of weeks that each class member worked for Defendants during the relevant time period, which can be calculated based on payroll data that Defendants provided prior to mediation. Those weeks worked before April 1, 2016 are given additional weight in the formula (using a multiplier of two) because the facts revealed in discovery indicated that Defendants changed several policies regarding overtime calculations and *per diem* payments to employees at this time, which would likely affect the strength the class members' wage claims arising after this date.

Under the proposed settlement, Defendants shall pay a total of $180,000, to be allocated as follows:

- $90,000 for the Class Shares of participating class members;

- $5,000 service payment to the named Plaintiff, Alejandro Ortiz-Patino;

- $60,000 for Class Counsel's attorneys' fees and costs;

- $25,000 for settlement of the named Plaintiff's discrimination claim pending at the MCAD, which amount was separately negotiated at mediation.

Defendants will fund the proposed settlement in four payments to be fully completed over an eighteen-month period. Payments to claiming class members will be made in three separate distributions to reflect the payment schedule. Any amounts remaining in the final distribution due to uncashed checks will be distributed as *cy pres* to the Employment Unit of Greater Boston Legal Services.[2] The settlement is non-reversionary; no funds will be returned to

---

[2] Due to the relatively small size of the class and the fact that Plaintiffs' counsel is administering the settlement in-house, Plaintiffs do not anticipate that there will be any uncashed checks requiring a *cy pres* distribution.

Defendants for any purposes.[3]  Class counsel has and shall continue to perform all settlement

administration duties in-house, including mailing of the settlement notice, tracking any

objections or requests for exclusion, calculating settlement shares, and coordinating with

Defendants to have checks issued to class members.  Class counsel shall not seek any additional

fees or costs associated with these duties, which will likely preserve thousands of dollars in class

funds that are often spent on costly third-party settlement administration.

Notice was distributed to fifty-six class members in Spanish and English via First Class

Mail on May 30, 2019.  Notice was also sent via email to 12 class members for whom

Defendants provided an email address.  None of the class members have excluded themselves

from the settlement class.  These individuals will be bound by a classwide release of all claims

based upon or related to the facts pled in the Amended Complaint, including claims related to

Defendants' alleged failure to pay all overtime wages due, except that only those class members

who sign their settlement check and receive funds will be deemed to have released their claims

under the FLSA.[4]

No class members have objected to the settlement.

## II.    THE FACTORS SET FORTH IN RULE 23(e)(2) OVERWHELMINGLY FAVOR GRANTING FINAL APPROVAL OF THE PROPOSED SETTLEMENT

It is well established that courts favor settlements of lawsuits over continued litigation.

See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); E.E.O.C. v. Astra U.S.A., Inc.,

---

[3] There may be some class members who do not cash their settlement checks from the first and second distributions, and those funds will be redistributed to all participating class members (i.e., those who have cashed their checks) through the third and final distribution.
[4] Plaintiff Ortiz-Patino will be subject to a general release of claims, recognizing that he is receiving additional consideration in the form of an incentive payment as well as consideration for release dismissal of his pending action at the MCAD.

94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can resolve many thousands . . . of claims that might otherwise threaten to swamp the judiciary," 2 McLaughlin on Class Action § 6:3.

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandates approval of such settlements if they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005). In order to determine whether the settlement is "fair, reasonable, and adequate," a court must look to Rule 23(e)(2)'s approval factors, which examine whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  An examination the relevant factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate, and should be approved by the Court.[5]

### 1. Class Counsel and the Class Representatives have adequately represented the Class under Rule 23(e)(2)(A)

Here, the named Plaintiff and class counsel have more than adequately represented the interests of the class.  The parties engaged in litigation for more than one year, including briefing two motions for conditional certification, conducting full written discovery, and conducting a deposition of the individual Defendant.  Through discovery, Plaintiffs' counsel obtained full payroll data of the putative Rule 23 class members from which they could calculate potential damages that could have been recovered if they were successful in their claims.  The named Plaintiff responded to written discovery, attended the full day mediation with class counsel to attempt to resolve this matter, and has provided invaluable assistance throughout the prosecution

---

[5] Similar settlements in wage and hour class action cases brought by Plaintiffs' counsel have been approved in dozens of cases.  These settlements contained terms similar to the proposed settlement in this case, including a similar method for notifying class members, distributing the settlement fund, allocating incentive payments, and providing for the one-third attorneys' fees award.  These cases include the following settlements approved in the District of Massachusetts and Massachusetts Superior Court: Garcia v. E.J. Amusements of New Hampshire, Inc., C.A. No. 13-12536 (D. Mass. 2015); DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013); Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013); Cutter et al v. HealthMarkets, Inc., C.A. No. 10-cv-11488 (D. Mass. 2012); Abla et al. v. Brinker Restaurant Corp., Civ. A. No. 10-10373 (D. Mass. 2011); Kiely et al v. TripAdvisor, C.A. 08-11284 (D. Mass. 2011); Maliniski et al. v. Starwood Hotels, Civ. A. No. 08-11859 (D. Mass. 2010); Hayes et al. v. Aramark Sports Service LLC, Civ. A. No. 08-10700 (D. Mass. 2009); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009); See, e.g., Reekie v. Ronit Hospitality LLC, Middlesex C.A. No. 1681-cv-0434 (Mass. Super. May 23, 2017); Corado v. Rufo Cleaning & Maintenance Co., Suffolk C.A. No. 15-1529 (Mass Super. 2016); DeSouza v. The Solomon Partnership Inc. d/b/a All-Pro Cleaning Systems, Middlesex C.A. No. 11-0792 (Mass Super. Aug. 23, 2016); Lavitman v. Uber Technologies, Inc. et al, Suffolk C.A. No. 2012-4490 (Mass. Super. 2015); Hernandez v. Harvard University, Middlesex C.A. 2012-3759 (Mass. Super. 2014); McCue v. A&M Andrade Management Corp., Suffolk C.A. 2013-1702 (Mass. Super. 2014); St. Cyr v. Mass. Institute of Technology, Norfolk C.A. No. 2012-01135 (Mass. Super. 2014); Branchaud v. Ruby Tuesday, Inc., Norfolk C.A. No. 2012-00216 (Mass. Super. 2013).

of this action.  There are no conflicts between the named Plaintiff and members of the settlement class.  Plaintiff's lead counsel, Attorney Liss-Riordan, has been widely recognized as one of the leading plaintiffs' lawyers nationally for her work on behalf of employees (particularly low-wage workers) in wage and hour litigation, and her firm is well known as one of the preeminent employee-side firms engaged nationwide in this area of practice. Attorney Liss-Riordan has prosecuted many dozens of such cases, including successful jury verdicts, appeals, and class certification proceedings.[6]  Class counsel was able to draw from this experience in representing the Plaintiffs in this action.

### 2.  The proposed settlement was clearly negotiated at arm's length under Rule 23(e)(2)(B) with the assistance of an experienced wage-and-hour mediator

The settlement was also negotiated at arms-length.  After engaging in discovery, the Parties retained the services of Hon. Peter Lauriat (Ret.) of JAMS in Boston, Massachusetts to assist in resolving this matter.  Prior to mediation, Plaintiffs' counsel conducted formal written discovery and deposed a Rule 30(b)(6) representative of Defendant, and analyzed classwide payroll information to determine the potential damages that could be recoverable if the class was to ultimately succeed at trial.  Such due diligence in the negotiation process is necessarily indicative of a fair result.  See generally In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

---

[6]    A sample of appellate decisions obtained by Attorney Liss-Riordan in this area includes:  Haitayan v. 7-Eleven, Inc., No. 18-55462 (9th Cir. 2019); Khanal v. San Francisco Hilton, Inc., 681 F. App'x 624 (9th Cir. 2017); Williams v. Jani–King, 837 F.3d 314 (3d Cir. 2016); Marzuq v. Cadete Enterprises, Inc., 807 F.3d 431, 433 (1st Cir. 2015); Depianti v. Jan-Pro Franchising International, Inc., 465 Mass. 607 (2013); Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191 (2013); Matamoros v. Starbucks Corp., 699 F.3d 129 (1st Cir. 2012); Awuah v. Coverall North America, Inc., 460 Mass. 484 (2011).

### 3.  The relief provided by the settlement is fair and adequate under Rule 23(e)(2)(C)(i) in light of the risks of proceeding to trial

The relief offered by the settlement is also more than adequate.  Plaintiffs estimate that the $90,000 to be distributed to class members approximates more than 80% of the class members overtime damages if they had been successful in all of their claims spanning the entire class period.  Although Plaintiffs were confident in the merits of their claims, Defendants had asserted a number of affirmative defenses and it also appeared from review of Defendants' payroll records that they changed their pay practices surrounding the manner and method of per diem calculations around April 2016, and therefore Plaintiffs' claims for unpaid overtime wages after that time period presented additional challenges.   As a result, the total settlement award represents a fair settlement of the class members' claims, particularly considering the hurdles that remained for the workers to obtain class certification and succeed on their claims.  In light of these uncertainties, as well as likely significant delays in obtaining any compensation even if they were ultimately successful at trial, Plaintiff and his counsel believe that the proposed settlement is an excellent result for these class members and that the recovery is consistent with what is frequently approved in wage and hour class actions.  See generally Norris v. Lake Conway Landscaping of Orlando, Inc., 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions); Clayton v. Knight Transp., 2013 WL 5877213, at *5 (E.D. Cal. Oct. 30, 2013) (approving Rule 23 settlement where with "approximately fifty percent of the amount of unpaid overtime to which they would be entitled should they prevail at trial"); Moreyra v. Fresenius Med. Care Holdings, Inc., 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (Rule 23 settlement approval where gross settlement amount was "approximately 32 percent of the lost wages"); see also In re Currency Conversion

Fee Antitrust Litig., 2006 WL 3247396 at *6 (S.D.N.Y. Nov.8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class).

> **4.    The notice process and the method for distributing relief to the Class members are both effective under Rule 23(e)(2)(C)(ii).**

The notice process, which this Court previously approved, has proven to be highly effective and successful.  Notice was sent to fifty-five class members via First Class mail, and twelve class members for whom Defendants were able to locate an email address also received the notice via email.  Only fourteen of the mailed notices were returned as undeliverable, and Plaintiffs' counsel made efforts to locate updated addresses for these individuals and re-mail the notice materials.  The notice was distributed in Spanish and English, and contained a concise explanation of the lawsuit, the value of the settlement, the anticipated amount of attorney's fees and the service award, the steps to be taken if a class member wished to exclude himself or herself or object to the settlement.

Importantly, the settlement is structured so that all class members will receive payment in the initial distributions of settlement funds, and class members were not required to submit a claim form to receive funds under the settlement.  Thus, it is anticipated that a significant percentage of class members will be able to obtain the benefits of the settlement.

> **5.    The requested attorney's fees are reasonable under Rule 23(e)(2)(C)(iii).**

Plaintiffs have requested that $60,000 total (or one-third of the $180,000 settlement fund) be awarded in attorney's fees.  Pursuant to the agreement, $47,500 of that amount is attributable to the settlement of the class claims (one-third of $142,500) and the remaining $12,500 arise from Plaintiff Ortiz-Patino's settlement of his MCAD charge (one-third of the remaining $37,500 of the common fund attributable to that claim).  Plaintiffs are not seeking an additional award of actual out-of-pocket litigation expenses, which included more than $3,500 dollars for

mediation fees, deposition and transcript costs, filing fees.  When accounting for these costs, the actual fees received by counsel are less than one-third of the fund.

A one-third amount for attorney's fees, which has been consistently approved by the courts in the cases listed above in footnote 5, is fair and reasonable and should be approved in this case as well.  As with all cases of this nature handled by Plaintiffs' counsel's firm, Plaintiffs' counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne all the expenses, costs, and risks associated with litigating this case.  The notice also informed class members that one-third of the settlement proceeds would be used to pay for attorneys' fees.

A one-third attorney's fee in a common fund case has been consistently approved as reasonable.  See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit., 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund).[7] Courts favor awarding fees from a common fund based upon the percentage of the fund method.  As the Supreme Court has explained:

---

[7]    In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have required the use of percentage awards in common fund cases. See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  See also Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving award of one-third attorneys' fee for a $23.5 million settlement in a Tips Law class action); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for a $12 million settlement in a Tips Law class action); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570 (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re: Peritus Software Servs., Inc. Sec. Litig., Civ. A. No. 98-10578 (D. Mass. 2000); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897 (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., Civ. A. No. 10829 (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation, Civ. A. No. 88-1858 (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, Civ.

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . .  Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted); see also Blum v. Stenson, 465 U.S 886, 900 n.16 (1984).

Among the advantages of the percentage approach recognized by the First Circuit in Thirteen Appeals was the fact that it is less burdensome to administer than the lodestar method. See Thirteen Appeals, 56 F.3d at 307.  The court in that case also endorsed the percentage of recovery approach because it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours.  See id. ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency.  Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement").  Similarly, the Court observed that the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills.  See id. ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  . . . the market pays for the result achieved"), quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992).

---

A. No. 94-10752 (D. Mass. 2001); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135 (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466 (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement).

Finally, awarding a percentage of the common fund, such as the one-third fee in this case, recognizes and encourages the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.[8]  Unlike traditional firms that receive hourly fees on a monthly basis, plaintiff's attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work.  Sometimes fees and expenses are recovered; other times, despite hundreds or even thousands of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees.  Courts have long recognized this reality.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  For that reason, courts have routinely approved one-third fee awards in class settlements, recognizing "the attorneys' fees requested [are] entirely contingent upon success.  Proposed Class Counsel risk[s] time and

---

[8]    In approving one-third contingency fees for such cases, courts have recognized that Plaintiffs' counsel who take cases on contingency, including the undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work.  The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive larger payments.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

effort and advance[s] costs and expenses, with no ultimate guarantee of compensation." Macedonia Church v. Lancaster Hotel, LP, 2011 WL 2360138, *14 (D. Conn. June 9, 2011).

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (addressing anti-trust laws). This reasoning applies with equal force to wage and hour claims.  See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).

Though not required, some courts awarding fees based on a percentage of the fund method perform a lodestar "cross check" to assess the reasonableness of the fee request.  See In re Relafen Antitrust Litig., 231 F.R.D. 52, 81 (D. Mass. 2005), citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir.2002) ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful *perspective* on the reasonableness of a given percentage award.").  Attorneys at Lichten & Liss-Riordan have worked more than 175 hours on this litigation, comprised of investigation, drafting the Complaint, moving twice for conditional certification, conducting full written discovery, taking a deposition, preparing for and

attending mediation, drafting the complex settlement agreement, preparing preliminary and final approval papers, and overseeing administration of the settlement.[9]

Even using a conservative blended hourly rate of $325 for each hour worked by counsel (including partners, senior associates, and associates who worked on this matter), the lodestar would be $56,875 ($325 * 175 hours). This amount is actually less than the $47,500 in fees attributable to the class portion of the settlement (0.83 "multplier"), and is nearly equal to total amount of fees that will be recovered from the common fund if one were to include the $12,500 in fees arising from Otiz-Patino's MCAD proceeding (a 1.05 "multiplier"). Fees are frequently awarded where the lodestar 'multiplier" is far higher than what is requested here. See In re Relafen Antitrust Litig., 231 F.R.D. at 82, citing Vizcaino, 290 F.3d at 1051 n. 6 (charting lodestar multipliers in common fund settlements and noting "a range of 0.6—19.6 with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range").

**6. The settlement treats Class members equitably under Rule 23(e)(2)(D).**

Finally, all settlement class members will receive equitable treatment under the settlement. Based on Plaintiff's counsel's review of payroll records and investigation of the class claims, Plaintiff's counsel has concluded that a uniform formula for calculating settlement shares that provides each individual class member with a set amount for each week that they worked is the most fair and reasonable formula to distribute funds to the class. For workweeks that occurred before April 1, 2016, class members will receive a "premium" (i.e., double value for their workweeks), because this was when Defendants' changed some of their policies regarding *per diem* pay and overtime calculations, which affects the merits of the claims arising

---

[9] This does <u>not</u> include any time dedicated to Mr. Ortiz-Patino's MCAD proceeding.

after that date.  Based on this formula, the proposed distribution set forth in Exhibit 3

demonstrates that class members' all stand to benefit under the settlement formula.

### III.    CONTINUING CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE UNDER RULE 23

In granting preliminary approval of the settlement, this Court certified the proposed

settlement class.  Plaintiffs now move for final certification of the Settlement Class pursuant to

the requirements of Fed. R. Civ. P. 23(a) and (b).  The proposed Rule 23 settlement class is

defined as follows:

> All persons who worked as welders, pipe fitters, ship fitters, machinists, electricians, painters, and laborers for Kamcor or MMDI in Massachusetts for all or part of the period from December 6, 2014 to the date of Preliminary Approval of this Settlement.

In order to obtain approval of the class action settlement on behalf of this group, the Court must

ensure that the prerequisites of Rule 23 are satisfied.  "To obtain certification of a class action for

money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s ... prerequisites of

numerosity, commonality, typicality, and adequacy of representation ... and must also establish

that 'the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy.'" Amgen Inc. v. Connecticut Ret. Plans &

Tr. Funds, 568 U.S. 455, 460 (2013), quoting Rule 23(b)(3).  The settlement class satisfies the

relevant criteria.

#### 1.  Numerosity

The numerosity requirement is satisfied because, due to the 56-person class, joinder of all

the class members would be impracticable.  Fed.R.Civ.P. 23(a)(1). Courts have often certified

classes of 40 or fewer individuals,[10] and courts have noted that a more relaxed "numerosity" requirement should be applied in the employment context based on the understanding that not all class members may wish to come forward individually and challenge their employer's conduct. See, e.g., Mullen v. Treasure Chest Casino, LLC., 186 F.3d 620, 624 (5th Cir. 1999) (fact that "putative class members were still employed by the Casino [and] might be reluctant to file individually for fear of workplace retaliation" weighed in favor of finding numerosity satisfied).

### 2. Commonality

A class also must share common questions of law or fact. Fed.R.Civ.P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." In re Relafen Antitrust Litig., 231 F.R.D. at 69. When the claims arise out of a companywide policy or practice, the commonality prerequisite is satisfied. See, e.g., Overka v. American Airlines, 265 F.R.D. 14, 18 (D. Mass. 2010) (the "commonality requirement is usually satisfied" where "implementation of [a] common scheme is alleged"). Here, the proposed class satisfies the "commonality" prong because they challenge Defendants' allegedly uniform policy of not properly calculating the class members' overtime wages by excluding the *pier diem* payments from the regular rate. See, e.g., Ripley v. Sunoco, Inc., 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation").

---

[10]    See, e.g., Knight v. Mill-Tel, Inc., 2013 WL 3895341 (D. Kan. July 29, 2013) ("Courts have found that classes as small as twenty members can satisfy the numerosity requirement"); Moore v. Napolitano, 926 F. Supp. 2d 8, 28 (D.D.C. 2013) (certifying class of 27 members); Knight v. Lavine, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) (holding that class of 56 people "easily satisfies" numerosity requirement).

### 3. Typicality

To meet the requirement of typicality, the class representatives' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." Garcia–Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir.2009) (internal quotation marks omitted). Here, Plaintiff's claims for unpaid overtime are identical to those asserted on behalf of the Rule 23 class members. See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23).

### 4. Adequacy

To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). Here, the named Plaintiff shares interests identical to those of the putative class members; namely, all seek to obtain unpaid overtime wages for times in which they worked more than forty hours per week for Defendants. Further, Class Counsel has been found to be "adequate" counsel in a number of prior wage-and-hour class actions brought on behalf of low-wage workers. See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 289 (D. Mass. 2015) (finding that counsel at Lichten & Liss-Riordan "is experienced and more than capable of proceeding with the litigation").

17

### 5. Predominance

Predominance is satisfied upon showing that a sufficient constellation of common issues bind class members together. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 296 (1st Cir. 2000). The requirement is "merely that common issues predominate, not that all issues be common to the class." Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 39 (1st Cir. 2003). Courts have routinely held that the predominance requirement is satisfied in overtime cases such as this where employees challenge a uniform policy of their employer, because there are common answers that will determine the outcome of the litigation; that is, had this case proceeded to trial, Plaintiffs would have attempted to prove that Defendants maintained a uniform policy in which workers did not receive the full overtime premium owed when they worked more than forty hours per week due to the manner in which Defendants' calculated the class members' "regular rate" of pay. See generally Lyons v. Citizens Fin. Grp., Inc., 2012 WL 5499878, at *3-*4 (D. Mass. Nov. 9, 2012) (certifying class under Rule 23 where all plaintiffs performed identical duties and challenged their classification as exempt from overtime pay).

### 6. Superiority

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. In re Relafen Antitrust Litig., 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997). Superiority is satisfied here, where the financial resources of the class members, most of whom are immigrant laborers, weighs in favor of certifying the class, as the

class members may not have the means to pursue individual actions to recover damages which, for a large number of class members, may be less than $1,000 even if they were successful at trial.

### IV.    THE INCENTIVE PAYMENT IS FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

The proposed settlement would include a modest incentive payment of $5,000 for the lead plaintiff, Alejandro Ortiz-Patino, who initiated this case, and has been actively involved in prosecution of this action since its inception.  Were it not for Ortiz-Patino's commitment to this action, classwide relief would not have been possible.  This incentive payment is eminently reasonable in this case, as Ortiz-Patino expended time and effort to bring these claims on behalf of himself and his co-workers assisting Plaintiffs' counsel in prosecution of these wage claims, responding to written discovery, and attending a full-day mediation in Boston in 2018.

Courts have routinely approved incentive payments in class settlements as a way of compensating class representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of state and federal law.  See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated actively in the litigation"), quoting In re Lupron, 228 F.R.D. 75, 98 (D. Mass. 2005); In re Compact Disc Min. Adver. Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit").

It is not uncommon for courts to approve incentive payments in much higher amounts than has been requested here.  See, e.g., Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving $25,000 incentive payments for lead Plaintiff in wage action); DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013) (same); Abla v. Brinker Restaurant Corp., Civ. A. No. 10-10373 (D. Mass. 2011) (same); Hayes v. Aramark Sports Service LLC, Civ. A. No. 08-10700 (D. Mass. 2009) (same); Apana v. Fairmont Hotels & Resorts, Inc., Civ. A. No. 08-00528 (D. Haw. 2011) (same).

V.      CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order 1) granting final certification of the Rule 23 class for settlement purposes only; 2) granting final approval of the parties' proposed settlement as fair, reasonable, and adequate, 3) dismissing all claims asserted in this action with prejudice.

Respectfully submitted,

ALEJANDRO ORTIZ-PATINO,
on behalf of himself and
all others similarly situated,
By his attorneys,


 /s/ Matthew Thomson
Shannon Liss-Riordan, BBO #640716
Matthew Thomson, BBO #682745
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
Facsimile:  (617) 994-5801
Email:  sliss@llrlaw.com
        mthomson@llrlaw.com


Dated:        August 16, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, a copy of this document was served by electronic filing on all counsel of record.

*/s/  Matthew W. Thomson*⎯⎯⎯⎯⎯
Matthew W. Thomson

4843-0133-9040, v. 1